**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| UNITED STATES OF AMERICA, ON BEHALF OF THE NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION AND THE UNITED STATES DEPARTMENT OF THE INTERIOR; THE STATE OF WASHINGTON THROUGH THE WASHINGTON DEPARTMENT OF ECOLOGY; MUCKLESHOOT INDIAN TRIBE; SUQUAMISH INDIAN TRIBE, <br><br> Plaintiffs, <br><br> v. <br><br> LYNDEN, INC.; KNIK CONSTRUCTION CO., INC; DOUGLAS MANAGEMENT COMPANY; ALASKA MARINE LINES, INC.; SWAN BAY HOLDINGS, INC.; BERING MARINE CORP.; 7100 FIRST AVENUE S SEATTLE, LLC; 5615 WEST MARGINAL WAY SW SEATTLE, LLC; 5600 WEST MARGINAL WAY SW SEATTLE, LLC; LTI, INC.; LYNDEN TRANSPORT, INC. (F/K/A LYNDEN TRANSFER, INC.); ALAGNAK HOLDINGS, LLC., <br><br> Defendants. | Case No. 23-cv-00101 <br><br> PLAINTIFFS' UNOPPOSED MOTION TO ENTER CONSENT DECREE <br><br> NOTE ON MOTION CALENDAR: March 29, 2023 |

PLAINTIFFS' UNOPPOSED             - 1 -             U. S. DEPARTMENT OF JUSTICE
MOTION TO ENTER                                      Environment and Natural Resources Division
CONSENT DECREE                                       7600 Sand Point Way NE
23-cv-00101                                          Seattle, WA  98115
                                                     (202) 532-3258

Plaintiffs, the United States (on behalf of the National Oceanic and Atmospheric Administration ("NOAA") and the Department of the Interior), the state of Washington (on behalf of the Washington Department of Ecology), the Muckleshoot Indian Tribe, and the Suquamish Indian Tribe (collectively, "Trustees"), move for entry of the Consent Decree ("Decree") lodged in this action. ECF No 3-1. The purpose of the Decree agreed to by Plaintiffs and Defendants is to resolve the liability of Defendants for the claims alleged by Plaintiffs, set forth in the Complaint (ECF. No. 1), pursuant to Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a); Section 311 of the Clean Water Act, 33 U.S.C. § 1321; Section 1002(b) of the Oil Pollution Act, 33 U.S.C. § 2702(b); and the Model Toxics Control Act ("MTCA"), RCW 70A.305, for natural resource damages caused by releases of hazardous substances and oil into the Lower Duwamish River ("River") from the facilities owned and operated by Defendants. The Decree requires Defendants to provide compensation for Defendants' equitable share of natural resource damages in the River associated with their facilities, and pay a proportionate share of the costs incurred by the Trustees for the assessment of damages. *Proposed Consent Decree*, ECF No. 3-1, § VI.

The proposed Decree was subject to a thirty-day public comment period that is now closed. Plaintiffs did not receive any comments. As set forth below, the proposed settlement with Defendants is fair, reasonable, and consistent with the applicable statutes, and accordingly, the Decree should be entered as a final order of this Court.

I.   BACKGROUND

    A.  **Lower Duwamish River Natural Resource Damages**

PLAINTIFFS' UNOPPOSED MOTION TO ENTER CONSENT DECREE
23-cv-00101

\- 2 -

U. S. DEPARTMENT OF JUSTICE
Environment and Natural Resources Division
7600 Sand Point Way NE
Seattle, WA  98115
(202) 532-3258

The Lower Duwamish River, which flows into Elliott Bay, has been subject to considerable levels of industrial and other uses by numerous parties throughout its history and into the present. Plaintiffs, who are trustees for the natural resources of the River pursuant to 42 U.S.C. § 9607(f)(1), are working to restore the natural resources injured by releases of hazardous substances and oil into the River. These contaminants have had serious impacts on the aquatic organisms and other natural resources that inhabit, or come into contact with, contaminated sediments or eat contaminated prey. The injured resources include fish and wildlife species and their habitat. *Declaration of Marla Steinhoff* ("Steinhoff Decl."), Attachment A, ¶¶ 6, 9. The Plaintiffs, supported primarily by funding from NOAA, have identified and analyzed these impacts. *See id.* at ¶¶ 5-9.

### B. Injury Assessment and Early Settlements

For the purpose of assessing early settlements, such as this Decree, the Trustees developed a streamlined process for estimating natural resource injuries and the restoration required to compensate for those damages. *Steinhoff Decl.*, ¶¶ 5-9. That streamlined process is called a Habitat Equivalency Analysis ("HEA"), which is a tool developed by NOAA for evaluation of natural resource injuries and required restoration. *Steinhoff Decl.*, ¶¶ 5, 8.[1] The HEA is designed to take into account the injuries resulting from the range of contaminants in

---

[1] The Trustees engaged with the public as part of the development of this HEA. In June 2013, NOAA issued the *Final Lower Duwamish River NRDA Restoration Plan and Programmatic Environmental Impact Statement* ("RP/PEIS"). This RP/PEIS was made available to the public in 2009 for review. A supplement to the RP/PEIS was made available for public review in 2012. In this supplement, the Trustees added more detail about the injury assessment and restoration valuation methodology used.

PLAINTIFFS' UNOPPOSED MOTION TO ENTER CONSENT DECREE
23-cv-00101

- 3 -

U. S. DEPARTMENT OF JUSTICE
Environment and Natural Resources Division
7600 Sand Point Way NE
Seattle, WA 98115
(202) 532-3258

sediments and calculate the total combined loss to natural resources over time from those contaminants. Because in this case the injuries to natural resources are caused principally by contaminated sediments, the HEA measures the injuries in terms of losses of ecological services provided per acre of affected habitat. Relying on information regarding the natural resources historically and currently found in the Lower Duwamish River, environmental studies of impacts to similar resources in similar marine and estuarine environments, state regulatory standards, and scientific literature, the Trustees determined the percentage loss of ecological services resulting from increased sediment concentrations of hazardous substances. *Steinhoff Decl.* ¶¶ 8-9.

The HEA is used to determine the amount of habitat restoration needed to compensate for ecological service losses over time. The HEA calculates the amount of habitat restoration needed to compensate for a given level of injuries by the gain in ecological services per acre provided by different restoration techniques in different habitats. To equate losses from contamination and gains from restoration occurring at different times, the losses and gains are discounted to a present value. *Steinhoff Decl.* ¶ 8. The resulting measure of natural resource damages is discounted service acre-years, or "DSAYs." Sufficient restoration is determined to be the number of acres of a particular type of restoration that generates the same amount of DSAYs as were lost due to the injury. For the Lower Duwamish River as a whole, the Trustees' working estimate of natural resource damages is 5,278 DSAYs. *Id.* ¶ 9 (citing *Memorandum Regarding Early Settlements and Discounted Service-Acre Years* (February 20, 2019)).

PLAINTIFFS' UNOPPOSED  
MOTION TO ENTER  
CONSENT DECREE  
23-cv-00101

- 4 -

U. S. DEPARTMENT OF JUSTICE  
Environment and Natural Resources Division  
7600 Sand Point Way NE  
Seattle, WA 98115  
(202) 532-3258

The HEA is then used to assign ecological losses to individual facilities.[2] The Trustees used two basic approaches in the Lower Duwamish River. First, for most hazardous substances, there was a "footprint" of contamination in the sediments that was attributed to particular facilities. Second, for more ubiquitous and diffuse contaminants, such as polycyclic aromatic hydrocarbons ("PAHs"), there were not sufficiently discrete footprints, and so a relative index approach was used, where liability was divided among the facilities that were known to have released the ubiquitous and diffuse contaminants. This division among facilities was based on the nature of the waste-producing activities at the site, the area involved and the time period during which these activities occurred. In some cases, where a footprint of contamination led to two or more facilities, the two techniques were combined. *Steinhoff Decl.*, ¶¶ 10, 11.

### C. Defendants' Equitable Share of Natural Resource Damages

As alleged in the Complaint, Defendants at various times owned and/or operated, or are the current owner and/or operator, of three facilities located along the River: 5600 West Marginal Way SW (from about 1989 to the present); 5615 West Marginal Way SW (from about 1970 to the present); and 7100 1st Avenue South (from about 1977 to the present). Activities at these properties have included ship berthing, ship dismantling, vehicle washing, barge loading and unloading, use of underground storage tanks, and use of creosote-treated wood and pilings. The Complaint alleges Defendants' operations at the facilities have resulted in discharges of oil

---

[2] It is beyond the scope of the HEA model to calculate highly precise loss or allocation estimates. Re-analysis of the allocation done for any facility can, and likely would, result in somewhat different final numbers, as additional information is continually being generated in connection with the ongoing cleanup efforts in the River under the supervision of the U.S. Environmental Protection Agency and the State of Washington. *See Steinhoff Decl.*, ¶ 13.

and releases of hazardous substances, including but not limited to, PAHs, tributyltin, bis(2-ethylhexyl) phthalate, and phenol to the River. *Complaint*, ECF No. 1, ¶ 14.

By examining the releases of contaminants from the facilities and Defendants' operations, the Trustees estimated releases from Defendants' facilities to account for injuries in the amount of 15 DSAYs. This settlement represents less than 0.3 % of the current estimate of total natural resource damages for the River.[3] *Steinhoff Decl.*, ¶ 12.

**D.  Terms of the Proposed Consent Decree**

To resolve their liability for Covered Natural Resource Damages, the Decree requires Defendants to: 1) pay $556,250 to the Trustees, which will be used by the Trustees for restoration of natural resource damages to address injuries to natural resources caused by Defendants' releases to the River; and 2) purchase restoration credits equivalent to 10.55 DSAYs in an established restoration project on the River that is being implemented by a restoration project developer and serves as a restoration credit bank. *Decree,* § VI.B & C. In addition, the Decree requires Defendants to pay $31,528.35 to reimburse their equitable share of the Trustees' injury assessment costs. *Id.* at § VI.A.

Pursuant to the Decree, Plaintiffs covenant not to sue Defendants for natural resource damages resulting from releases of hazardous substances or discharges of oil from the facilities identified in the Decree into the Lower Duwamish River or its adjoining shorelines. *Decree*, § V, ¶ 4(d) (definition of Covered Natural Resource Damages) & § VIII (Covenant Not to Sue by

---

[3] Plaintiffs believe that the allocation process here goes far beyond what is required under applicable law and should not be regarded as a minimum for other settlements in other cases. The financial and technical resources required for the HEA process used here may not be available at other sites.

PLAINTIFFS' UNOPPOSED
MOTION TO ENTER
CONSENT DECREE
23-cv-00101

- 6 -

U. S. DEPARTMENT OF JUSTICE
Environment and Natural Resources Division
7600 Sand Point Way NE
Seattle, WA  98115
(202) 532-3258

Plaintiffs). Plaintiffs' covenant is subject to reservations of rights set forth in Section IX of the Decree. This includes a reservation for "additional claims for Covered Natural Resource Damages if conditions, factors or information in the Lower Duwamish River and/or Elliott Bay, not known to the Trustees as of the Effective Date, are discovered that, together with any other relevant information, indicate that there is a threat to the environment, or injury to, destruction of, or loss of Natural Resources of a type unknown, or of a magnitude significantly greater than was known, as of the Effective Date" of the Decree. *Id*., ¶ 17(g). The Decree also provides Defendants with protection from contribution actions or claims by other liable parties for Covered Natural Resource Damages. *Id.*, ¶ 20.

### E. Public Comment

Pursuant to 28 C.F.R. § 50.7, the United States published a notice of lodging of the Decree in the Federal Register, 88 *Fed. Reg*. 5920-5921 (January 30, 2023). The thirty-day comment period is now closed. No comments were received.

## II. STANDARD OF REVIEW

The standard of review for the proposed Consent Decree is whether the decree is fair, reasonable, and consistent with the objectives of the statutes at issue. *United States v. Montrose Chem. Corp. of Cal.*, 50 F.3d 741, 743 (9th Cir. 1995) (natural resource damages under CERCLA); s*ee also United States v. Bd. of Trustees of Univ. of Ill.*, No. 07-2188, 2008 WL 345542, at *2 (C.D. Ill. Feb. 7, 2008) (natural resources consent decree under Clean Water Act). Consent decrees under MTCA are subject to an arbitrary and capricious standard of review. *See Dep't of Ecology v. Tiger Oil Corp.*, 166 Wash. App. 720, 753-54 (2012); RCW 70A.305.060.

PLAINTIFFS' UNOPPOSED MOTION TO ENTER CONSENT DECREE
23-cv-00101

- 7 -

U. S. DEPARTMENT OF JUSTICE
Environment and Natural Resources Division
7600 Sand Point Way NE
Seattle, WA  98115
(202) 532-3258

The decision to approve a proposed consent decree is committed to the informed discretion of the district court, *United States v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990), and the court's review is informed by the "overriding public interest in settling and quieting litigation." *United States v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977); *see also Speed Shore Corp. v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979) ("Settlement agreements conserve judicial time and limit expensive litigation."). Proposed consent decrees in CERCLA cases are entitled to deference from the court reviewing the decree. *Montrose Chem. Corp.*, 50 F.3d at 746; *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990). The judicial policy favoring settlements "is strengthened when a government agency charged with protecting the public interest 'has pulled the laboring oar in constructing the proposed settlement.'" *Montrose Chem. Corp.*, 50 F.3d at 746 (quoting *United States v. Cannons Eng'g Corp.*, 899 F.2d 79 at 84). "[T]he reviewing court's role is to 'scrutinize' the settlement, but the acting governmental units are entitled to some deference." *Washington v. United States*, No. CIV. 06-05225RJB, 2007 WL 3025843, at *5 (W.D. Wash. Oct. 15, 2007) (citing *Montrose Chem. Corp.*, 50 F.3d at 747); *see also Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco*, 688 F.2d 615, 630 (9th Cir. 1982) (a court is not "empowered to rewrite the settlement agreed upon by the parties," or to "delete, modify, or substitute certain provisions of the consent decree.").

### III.  ARGUMENT: THE COURT SHOULD APPROVE THE DECREE BECAUSE IT IS FAIR, REASONABLE, AND CONSISTENT WITH APPLICABLE STATUTES.

#### A.  The Decree is Procedurally and Substantively Fair.

The determination of whether a consent decree is "fair" requires the reviewing court to conduct a two-pronged inquiry, assessing "whether the decree was both (1) the product of a

PLAINTIFFS' UNOPPOSED
MOTION TO ENTER
CONSENT DECREE
23-cv-00101

- 8 -

U. S. DEPARTMENT OF JUSTICE
Environment and Natural Resources Division
7600 Sand Point Way NE
Seattle, WA  98115
(202) 532-3258

procedurally fair process, and (2) substantively fair to the parties in light of a reasonable reading of the facts." *Montrose Chem. Corp.*, 50 F.3d at 746.

This Decree is the result of a procedurally fair process. "In measuring procedural fairness, 'a court should ordinarily look to the negotiation process and attempt to engage its candor, openness, and bargaining balance.'" *Washington v. United States*, 2007 WL 3025843, at *6 (citing *Cannons Eng'g Corp.*, 899 F.2d at 87). Courts find procedural fairness where the settlement was negotiated at arm's length among experienced counsel. *See, e.g., Cannons Eng'g Corp.*, 899 F.2d at 84; *Washington v. United States*, 2007 WL 3025843, at *6. Here, the Trustees provided notice and invited potentially responsible parties to participate in early settlement discussions. The Trustees have negotiated, and continue to negotiate, with those parties that timely expressed interest in settlement.[4] *Steinhoff Decl.*, ¶ 15 (citing *Trustee Council Resolution* 2009-05). Defendants elected to participate in this early settlement process. Both Plaintiffs and Defendants were represented by experienced counsel in the negotiation process, which involved many exchanges to reach agreement on the terms of the proposed Decree.

The proposed Decree is also substantively fair. Substantive fairness derives from "concepts of corrective justice and accountability: a party should bear the cost of the harm for which it is legally responsible." *Cannons Eng'g Corp.*, 899 F.2d at 87. Because these concepts

---

[4] This proposed Decree follows prior settlements for natural resource damages in the Lower Duwamish River, entered with: The Boeing Company in 2010, 10-cv-00758, ECF. No. 8; Earle M. Jorgensen Company in 2019, 19-cv-00907, ECF. No. 6-1; the City of Seattle in 2021, 16-cv-1486, ECF. No. 31; and Vigor Industrial, LLC and Exxon Mobil Corp. in 2021, 21-cv-00044, ECF No.7. Negotiations with other responsible parties that timely expressed interest in settlement are ongoing.

are not easily quantified in environmental cases, the government's expertise and conclusions receive "the benefit of the doubt when weighing substantive fairness." *Id*. at 88. As the Ninth Circuit held in *Montrose*, in the context of a consent decree for natural resource damages "the proper way to gauge the adequacy of settlement amounts to be paid by settling [Parties] is *to compare the proportion of total projected costs to be paid by the settlors with the proportion of liability attributable to them,* and then to factor into the equation any reasonable discounts for litigation risks, time savings, and the like that may be justified." *Montrose Chem. Corp.*, 50 F.3d at 747 (emphasis in original) (citing *United States v. Charles George Trucking, Inc.,* 34 F.3d 1081, 1087 (1st Cir. 1994)); *see also Arizona v. City of Tucson*, 761 F.3d 1005, 1012 (9th Cir. 2014) ("in order to approve a CERCLA consent decree, a district court must find that the agreement is 'based upon, and roughly correlated with, some acceptable measure of comparative fault'" (quoting *United States v. Charter Int'l Oil Co.,* 83 F.3d 510, 521 (1st Cir.1996))); *Washington v. United States*, 2007 WL 3025843, at *7. As set forth above, for the purpose of assessing early settlements with individual parties, including this Decree, the Trustees conducted a detailed process, based on extensive information, for estimating total injuries to natural resources in the River, and restoration needed to compensate for those injuries, as well as equitably allocating that liability among facilities and liable parties. This Decree is substantively fair because Defendants are purchasing restoration credits in a restoration project and making a payment to the Trustees to support implementation of restoration that will compensate for their equitable share of the Trustees' estimate of total natural resource injuries, and paying their equitable share of assessment costs, as determined through this process. *See United States v. Bd. of Trustees of Univ. of Ill.*, No. 07-2188, 2008 WL 345542, at *2 (C.D. Ill. Feb. 7, 2008) (holding

PLAINTIFFS' UNOPPOSED MOTION TO ENTER CONSENT DECREE
23-cv-00101

- 10 -

U. S. DEPARTMENT OF JUSTICE
Environment and Natural Resources Division
7600 Sand Point Way NE
Seattle, WA  98115
(202) 532-3258

natural resources consent decree was substantively fair "in that it recovers the past costs of assessing the damages to natural resources and future restoration costs in a reasonable amount").

### B. The Decree is Reasonable.

Factors relevant in the Court's evaluation of the "reasonableness" of a consent decree are (1) "the decree's likely efficaciousness as a vehicle for cleansing the environment" and (2) "whether the settlement satisfactorily compensates the public." *Cannons Eng'g Corp.*, 899 F.2d at 89-90; *see also Washington v. United States*, 2007 WL 3025843, at *7 (listing additional factors). This Decree is an effective vehicle for addressing injuries to the environment because it requires Defendants to purchase restoration credits in a restoration project and make a payment that will support the implementation of habitat projects designed to help restore natural resources injured by Defendants' releases to the River. The proposed settlement provides adequate compensation to the public for Defendants' equitable share of total natural resource injuries, including recovery of their equitable share of the Trustees' past assessment costs. Accordingly, the proposed Decree is reasonable and not an arbitrary and capricious act. S*ee United States v. Fort James Operating Co.,* 313 F. Supp. 2d 902, 910 (E.D. Wis. 2004) (natural resource damages consent decree was reasonable where the "only imaginable alternative to settlement would be complex and probably lengthy litigation"); *Bragg v. Robertson, 83 F. Supp. 2d 713*, 717 (S.D. W.Va. 2011) ("It is precisely the desire to avoid a protracted examination of the parties' legal rights that underlies entry of consent decree. Both the parties and the general public benefit from the saving of time and money that results from the voluntary settlement of litigation.").

PLAINTIFFS' UNOPPOSED MOTION TO ENTER CONSENT DECREE
23-cv-00101

- 11 -

U. S. DEPARTMENT OF JUSTICE
Environment and Natural Resources Division
7600 Sand Point Way NE
Seattle, WA  98115
(202) 532-3258

Moreover, the Trustees place a high value on early settlements such as is embodied in this Decree because they address injuries to natural resources more quickly than having to wait years for resolution of complex and lengthy litigation. *See*, *e.g.*, *United States v. BP Prods. N. Am. Inc.*, No. 2:12-CV-207, 2012 WL 5411714, at *4 (N.D. Ind. Nov. 6, 2012) (consent decree "serves the public interest by providing these environmental benefits more quickly and at less cost than could be achieved through litigation . . . a risky proposition with uncertain results."). The earlier restoration is implemented, the sooner natural resources injured by releases of contaminants can begin to recover. The benefits of early restoration are especially important for species in the Lower Duwamish River listed under the Endangered Species Act, 16 U.S.C. §§ 1531 *et seq.* Steinhoff Decl. ¶ 15; 72 *Fed. Reg.* 26,722 (May 11, 2007) (steelhead); 70 *Fed. Reg.* 56,212 (Sept. 26, 2005) (bull trout); 64 *Fed. Reg.* 14,308 (March 24, 1999) (chinook salmon).

**C.  The Decree is Consistent with the Applicable Statutes.**

Finally, the Court must consider "the extent to which consent decrees are consistent with Congress' discerned intent" in the statutes at issue. *Cannons Eng'g Corp.*, 899 F.2d at 90. CERCLA, 42 U.S.C. § 9607(a) provides,

> any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, . . . shall be liable for, . . . damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release.

The Oil Pollution Act establishes that parties responsible for discharges of oil are liable for "[d]amages for injury to, destruction of, loss of, or loss of use of, natural resources, including the reasonable costs of assessing the damage." 33 U.S.C. §§ 2702(a), (b)(2)(A). The Clean Water

Act provides that an owner or operator of a facility from which oil or a hazardous substance is discharged "into or upon the navigable waters of the United States, [or] adjoining shorelines . . ." shall be liable for the costs of removal of such oil or substance, which shall include "any costs or expenses incurred by the Federal Government or any State government in the restoration or replacement of natural resources damaged or destroyed as a result of a discharge of oil or a hazardous substance." 33 U.S.C. § 1321. Similarly, MTCA imposes strict liability for "all natural resource damages resulting from the releases or threatened releases of hazardous substances." RCW 70A.305.040(2).

The terms of the Decree are consistent with these objectives. The Decree addresses past releases of hazardous substances and discharges of oil that damaged natural resources in the River. The Decree addresses those releases by requiring Defendants to purchase restoration credits in a restoration project and make a payment to the Trustees that will support the implementation of additional projects to help restore injured natural resources. Accordingly, the settlement provides effective compensation based on Defendants' equitable share of liability for total natural resource injuries, and is consistent with the purposes of CERCLA, the Clean Water Act, the Oil Pollution Act, and MTCA.

## IV.  REQUEST TO ENTER THE CONSENT DECREE

For the reasons set forth above, Plaintiffs respectfully request that this Court enter the Decree as a final judgment in this action pursuant to Fed. R. Civ. P. 54 & 58. As set forth in Paragraph 33 of the Decree, Defendants have already consented to its entry. Plaintiffs request the Court enter the Decree by signing the Decree attached at ECF No. 3-1 on the signature line provided on page 25.

PLAINTIFFS' UNOPPOSED
MOTION TO ENTER
CONSENT DECREE
23-cv-00101

- 13 -

U. S. DEPARTMENT OF JUSTICE
Environment and Natural Resources Division
7600 Sand Point Way NE
Seattle, WA  98115
(202) 532-3258

Dated: March 29, 2023

UNITED STATES OF AMERICA

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division

/s/ Erika M. Wells
ERIKA M. WELLS, OSBA #055004
Senior Counsel
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice, c/o NOAA
7600 Sand Point Way, NE
Seattle, Washington 98115
(202) 532-3258

STATE OF WASHINGTON

ROBERT FERGUSON
Attorney General

/s/ John Level
JOHN LEVEL, WSBA #20439
Assistant Attorney General
2425 Bristol Court S.W.
P.O. Box 40117
Olympia, WA 98504 0117

SUQUAMISH INDIAN TRIBE

/s/ Kendra A. Martinez
KENDRA A. MARTINEZ, WSBA #50602
Suquamish Indian Tribe, Office of Tribal Attorney
P.O. Box 498
Suquamish, WA 98392-0498

PLAINTIFFS' UNOPPOSED
MOTION TO ENTER
CONSENT DECREE
23-cv-00101

- 14 -

U. S. DEPARTMENT OF JUSTICE
Environment and Natural Resources Division
7600 Sand Point Way NE
Seattle, WA 98115
(202) 532-3258

(360) 394-8494

MUCKLESHOOT INDIAN TRIBE

 /s/ Trent S.W. Crable 
TRENT S.W. CRABLE, WSBA #38227
Muckleshoot Indian Tribe
39015 172nd Avenue SE
Auburn, WA 98092
(253) 876 3185

PLAINTIFFS' UNOPPOSED MOTION TO ENTER CONSENT DECREE
23-cv-00101

- 15 -

U. S. DEPARTMENT OF JUSTICE
Environment and Natural Resources Division
7600 Sand Point Way NE
Seattle, WA 98115
(202) 532-3258

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 29, 2023 a copy of the foregoing, PLAINTIFFS' UNOPPOSED MOTION TO ENTER CONSENT DECREE, was served by the Court's CM/ECF system upon all persons registered to receive filings in this matter. I also served a copy via electronic mail to:

Everett Billingslea
ehb@lynden.com

Chuck Blumenfeld
cblumenfeld@perkinscoie.com

*Counsel for Lynden Defendants*

/s/ Erika M. Wells

PLAINTIFFS' UNOPPOSED MOTION TO ENTER CONSENT DECREE
23-cv-00101 - 16 - U. S. DEPARTMENT OF JUSTICE
Environment and Natural Resources Division
7600 Sand Point Way NE
Seattle, WA 98115
(202) 532-3258